IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KEVIN HILL,

        Plaintiff,                          No. CIV S-08-1377 GGH

   vs.

MICHAEL J. ASTRUE,              ORDER
Commissioner of
Social Security,

        Defendant.
                                     /

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons that follow, plaintiff's Motion for Summary Judgment is GRANTED in part, the Commissioner's Cross Motion for Summary Judgment is DENIED, the Clerk is directed to enter judgment for the plaintiff, and this matter is remanded to the Commissioner for further development of the record.

BACKGROUND

        Plaintiff, born February 4, 1961, applied on August 10, 2005 for disability benefits. (Tr. at 58.) Plaintiff alleged he was unable to work due to heart attack, heart problems, high blood pressure, high cholesterol, asthma, and back problems. (Tr. at 64.)

In a decision dated December 19, 2007, ALJ Plauche Villere Jr. determined plaintiff was not disabled. The ALJ made the following findings:[1]

> 1. The claimant has not engaged in substantial gainful activity since August 10, 2005, the application date (20 CFR 416.920(b) and 416.971 *et seq.*).
>
> 2. The claimant has the following severe impairments: coronary artery disease, status post myocardial infarction and surgical revascularization, a history of asthma, a history of left carpal tunnel syndrome, and obesity. (20 CFR 416.920(c)). These findings are supported by the treating source records and the findings of the consultative internal medicine specialists.
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
    The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

| | | |
|---|---|---|
| | 4. | After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work, which includes the ability to stand, walk and sit for at least six hours in an eight-hour period with regular break opportunities, and to lift twenty pounds occasionally and ten pounds frequently. He is limited to occasional climbing of ramps/stairs, ladders/ropes/scaffolds, balancing, stooping, kneeling, crouching, and crawling. The claimant should avoid excessive exposure to fumes, odors, dusts, gases and poor ventilation. |
| | 5. | The claimant is unable to perform any past relevant work (20 CFR 416.965). |
| | 6. | The claimant was born on February 4, 1961 and was 44 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963). |
| | 7. | The claimant has a high school equivalent (GED) education and is able to communicate in English (20 CFR 416.964). (Exhibit 1E/6). |
| | 8. | Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). |
| | 9. | Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(c) and 416.966). |
| | 10. | The claimant has not been under a disability, as defined in the Social Security Act, since August 10, 2005, the date the application was filed (20 CFR 416.920(g)). |

(Tr. at 17-22.)

ISSUES PRESENTED

Plaintiff has raised the following issues: A. Whether the ALJ Failed to Develop the Record by not Providing Plaintiff's Records to the Consultative Examiner or Securing a Proper PFT Study; and B. Whether the ALJ Erred in Utilizing the Grids Instead of Vocational

3

1 Testimony.

2 LEGAL STANDARDS

3 The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), *quoting* Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

ANALYSIS

A. Whether the ALJ Failed to Fully Develop the Record

Plaintiff next claims that the ALJ failed to fully develop the record in three respects. First, the ALJ expressly ordered a second consultative examination in part because the first consulting examiner did not have any of plaintiff's medical records; however, the second examiner, Dr. Brimmer, was not provided any records either. Second, plaintiff was administered a pulmonary function test (PFT) after he had taken his medication; consequently the test overestimated his lung capacity and a new PFT is required. Third, the ALJ failed to develop the record in regard to obesity, considering it only at step two.

Disability hearings are not adversarial. Dixon v. Heckler, 811 F.2d 506, 510 (10th Cir. 1987) (holding that ALJ has basic duty to "inform himself about facts relevant to his decision") (quoting Heckler v. Campbell, 461 U.S. 458, 471 n.1 (1983) (Brennan, J., concurring)). The ALJ must fully and fairly develop the record, and when a claimant is not

represented by counsel, an ALJ must be "especially diligent in exploring for all relevant facts." Tonapetyan v. Halter, 242 F.3d 1144 (9th Cir. 2001).[2]  The duty also is heightened in the case of a mentally ill claimant who may not be able to protect him or herself.  Id.

Evidence raising an issue requiring the ALJ to investigate further depends on the case.  Generally, there must be some objective evidence suggesting a condition which could have a material impact on the disability decision.  See Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir.1996); Wainwright v. Secretary of Health and Human Services, 939 F.2d 680, 682 (9th Cir.1991).  "Ambiguous evidence . . . triggers the ALJ's duty to 'conduct an appropriate inquiry.'"  Tonapetyan, 242 F.3d at 1150 (quoting Smolen, 80 F.3d at 1288.)

The ALJ can develop the record by (1) making a reasonable attempt to obtain medical evidence from the claimant's treating sources, (2) ordering a consultative examination when the medical evidence is incomplete or unclear and undermines ability to resolve the disability issue; (3) subpoenaing or submitting questions to the claimant's physicians; (4) continuing the hearing; or (5) keeping the record open for supplementation.  See Tonapetyan, 242 F.3d. at 1150; 20 C.F.R. 404.1517, 416.917; 42 U.S.C. § 423(d)(5)(A), (B).  Ordering a consultative examination ordinarily is discretionary, see Wren v. Sullivan, 925 F.2d 123, 128 (5th Cir.1991); Jones v. Bowen, 829 F.2d 524, 526 (5th Cir.1987), and is required only when necessary to resolve the disability issue.  See Reeves v. Heckler, 734 F.2d 519, 522 (11th Cir.1984); Turner v. Califano, 563 F.2d 669, 671 (5th Cir.1977).

The hearing transcript reflects that the primary reason the ALJ obtained a further consultation was because no breathing tests were administered.  (Tr. at 281.)  The ALJ also noticed that the first consultative examiner did not have medical records available and stated that the second consult would have the records.  (Id. at 283.)

\\\\\

---

[2]  See also Crane v. Shalala, 76 F.3d 251, 255 (9th Cir.1996) (ALJ has duty to develop the record even when claimant is represented).

5

Dr. Brimmer performed the second consultative exam.  Plaintiff's chief complaint at this October 11, 2007 visit was shortness of breath.  (Id. at 246.)  Dr. Brimmer found it especially difficult to assess plaintiff's condition because he was a poor historian and she did not have his medical records.  The regulations require that a consultative examiner be given any necessary background information about the plaintiff's condition.  20 C.F.R. § 404.1517.  Background information is essential because consultative exams are utilized "to try to resolve a conflict or ambiguity if one exists."  20 C.F.R. § 404.1519a(a)(2).

Here, Dr. Brimmer specifically stated, "[o]verall, I do not believe the claimant gives a reliable history as he seems to have limited medical knowledge regarding his condition, and unfortunately, I do not have any medical records."  (Tr. at 246.)  Plaintiff reported to this internist that a pulmonologist told him that his shortness of breath was bronchitis; however, plaintiff was taking Advair and albuterol which are normally prescribed for asthma,[3] COPD, chronic bronchitis, or emphysema, indicating that he was not accurate in his recall of his diagnoses.  Www.advair.com; www.webmd.com.  (Id. at 247.)  In regard to his heart condition, plaintiff reported that he had coronary disease, and that his heart was not pumping as well as it should; however, he could not tell Dr. Brimmer if he was having heart failure.  (Id. at 246.)  He stated only that he had shortness of breath since his bypass surgery in 2001.  (Id.)  In examining the lungs, plaintiff had no wheezing, crackles, rhonchi, or increased respiratory phase.  (Id. at 249.)  This doctor repeated that plaintiff had limited medical knowledge concerning his condition, and she found him to be not completely reliable for this reason.  She also noted that at the end of the physical exam and range of motion testing, plaintiff's breath sounds were more audible and he used slightly shortened sentences.  (Id. at 248.)  Plaintiff reported that he suffered from "generalized fatigue and feeling tired all the time," (Id. at 246), but because Dr. Brimmer

---

[3] Part of plaintiff's breathing problems may be that he was taking the wrong dosage.  He was prescribed Advair to be taken one puff, twice daily, and albuterol as needed for wheezing.  (Id. at 224.)  Instead, plaintiff reported to Dr. Brimmer that he was taking albuterol "zero to two times a day," and Advair "as needed."  (Id. at 247.)

did not have plaintiff's medical records or any other background information, she could not get a handle on plaintiff's medical history, and consequently was not sure whether the shortness of breath and fatigue were due to pulmonary or cardiac causes. (Id. at 250.) She specifically stated, The shortness of breath "may be related to a pulmonary or cardiac etiology. .... I did not get a clear picture if the claimant has a history of heart failure." (Id.) As a result, Dr. Brimmer did not give a diagnosis related to plaintiff's shortness of breath but speculated as to the causes.

Not only did Dr. Brimmer not have any explanatory background or medical records at her disposal, she also was unable to get an accurate history from plaintiff, whom she specifically found not completely reliable. This case must be remanded for another consultation which should be based on an accurate medical history. In addition to plaintiff's shortness of breath, also important to the disability analysis is the cause of plaintiff's fatigue as it would affect his residual functional capacity.

The failure to obtain an accurate PFT also requires remand. Dr. Brimmer specifically noted that although plaintiff had a PFT scheduled for the date of her exam, he mistakenly believed that he was supposed to take his albuterol before the test. (Tr. at 250.) As pointed out by plaintiff and Dr. Brimmer, he needs a PFT untainted by medication which helps him breathe easier.

Defendant asserts that the fact that the PFT study went forward as scheduled indicates that Dr. Brimmer's concern was not warranted. Defendant contends that the tester noted plaintiff's inhaler use but saw no reason to doubt the validity of the test for this reason. The report itself is not this clear, however. It states only that "claimant uses albuterol, Advair and smokes ten cigarettes per day." (Id. at 237.) It does not refer to plaintiff's albuterol use on the day of the test. Furthermore, it states that "claimant experienced no symptoms of distress," indicating that the albuterol was probably working, and therefore the test was not an accurate reflection of plaintiff's condition. (Id.) Additionally, defendant refers to plaintiff's "variable effort"; however, the fact that additional testing was done for this reason is not relevant to

plaintiff's albuterol use prior to the test.

Remand is especially necessary because the first consultative examiner, Dr. Seu, also had no records available to him. (Tr. at 122.) As with Dr. Brimmer's consultation, one of plaintiff's chief complaints was asthma. Plaintiff had reported that exertion and weather changes exacerbated his asthma. (Id. at 122.) Dr. Seu diagnosed asthma and found that plaintiff had only moderate to fair control of his symptoms *with* use of an inhaler. (Id. at 124.) (emphasis added). Despite the seriousness of this diagnosis, no PFT or other breathing study was available or ordered.

Also exacerbating plaintiff's shortness of breath and necessitating a remand is plaintiff's obesity. The ALJ found obesity to be a severe impairment at step two, but did not discuss this condition at any further steps of the analysis. (Tr. at 17.) Plaintiff's obesity is acknowledged in the record, and plaintiff was advised to lose weight. (Id. at 220.)

Obesity must be considered as a factor contributing to disability, unless the ALJ makes a specific factual finding based on substantial evidence that the obesity is remediable. Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993). SSR 02-01p makes clear that obesity is a disease that must be considered when evaluating disability, and the "combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." The ALJ "will evaluate each case based on the information *in the case record*." (Id.) (emphasis added). Even if it is ultimately determined that listing equivalence is not satisfied, the ALJ must take into account the fact of obesity at the other levels of the sequential analysis. At step four and five of the sequential analysis, the ALJ should consider obesity in determining RFC and vocational ability:

> According to the Social Security Rules, in evaluating obesity to determine a claimant's RFC, the ALJ's assessment 'must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.' SSR 02-01p (2002). As with other impairments, the ALJ should explain how he determined whether obesity caused any physical or mental impairments. *See id.*

8

Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005).

At 70 to 71 inches and between 230 and 248 pounds, plaintiff is obese. (Id. at 139, 224.) www.nhlbisupport.com/bmi/. Although the ALJ found obesity to be a severe impairment, and mentioned in passing that plaintiff was encouraged to lose weight, he did not really analyze its impact on plaintiff's other medical conditions or his residual functional capacity. (Tr. at 18.) This condition has the capacity to affect many aspects of plaintiff's functioning in areas where he is already having problems, such as coronary artery disease, asthma, hypertension, and borderline diabetes.

Defendant attempts to defend the decision, arguing that the ALJ's functional limitations adequately addressed any impact obesity might have on plaintiff's musculoskeletal, respiratory or cardiovascular systems. These limitations may have addressed some of these areas, in that plaintiff was limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling, and avoidance of excessive exposure to environmental irritants; however, it is certainly not clear whether the ALJ considered obesity in imposing these limitations, and if he would have imposed additional limitations if he had considered obesity. Further, obesity should have been considered at the other steps as it very well could impact plaintiff's other medical conditions.[4]

CONCLUSION

If additional administrative proceedings would remedy the defects in the decision, remand is appropriate. Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); Barbato v. Commissioner of Social Security Admin., 923 F. Supp. 1273, 1277-78 (C.D.Cal. 1996). The court concludes, as did Barbato, that this case should be remanded for further administrative proceedings to enable the ALJ to obtain a more complete record, and to avoid the possibility of

---

[4] The ALJ acknowledged plaintiffs' severe hypertension but found it not to be a severe impairment because it was remedial and stable with medication. (Id. at 18.) Also found not severe were borderline diabetes, high cholesterol, and back pain. (Id. at 17-18.) The court does not take issue with those findings.

9

an inequitable result. Because the court has determined that this matter must be remanded for further proceedings, the court need not determine plaintiff's other assertions of error. However, nothing the court has stated herein should be taken as an opinion that claimant is, in fact, unable to work at any level.

In sum, the court finds the ALJ's assessment is not fully supported by substantial evidence in the record or based on the proper legal standards. Accordingly, claimant's Motion for Summary Judgment is GRANTED in part, and the Commissioner's Cross Motion for Summary Judgment is DENIED. This matter is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. §405(g) for further findings in accordance with this order.

DATED: 10/21/09

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
U.S. MAGISTRATE JUDGE

GGH/076
Hill1377.ss.wpd